In the MATTER OF Clifford
G. ANTCLIFF.

No. 41S00–9105–DI–399.

Supreme Court of Indiana.

March 4, 1994.

Clifford D. Antcliff, Franklin, pro se.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

This matter comes before the Court pursuant to a complaint for disciplinary action filed by the Disciplinary Commission and alleging that the Respondent, Clifford G. Antcliff, violated several provisions of the *Rules of Professional Conduct for Attorneys at Law.* This Court appointed a Hearing Officer pursuant to Ind.Admission and Discipline Rule 23, Section 11(e), and, following hearing, he tendered his Findings of Fact and Conclusions. The Respondent, pursuant to Admis.Disc.R. 23, Section 15, has petitioned this Court for review of the Hearing Officer's findings and conclusions, and has filed supporting briefs. The Commission thereafter filed a response to Respondent's petition for review, contending that it should properly be held for naught and that this Court should review the Hearing Officer's report as if Respondent had not moved for review.

■ In support of its position, the Commission points out that Respondent failed to file a record of proceedings to support the assertions in his petition for review and supporting briefs. The Respondent filed two petitions for review on March 25, 1993, twenty-five days after the Hearing Officer filed his report, and included therein a request for an extension of time within which to procure a transcript and file a supplemental brief, which this Court granted. Although Respondent thereafter timely filed briefs, he indicated he was unable to procure a complete transcript. The reasons for his failure to procure the transcript are not entirely clear; however, we are convinced that his failure was largely self-imposed. Admis.Disc.R. 23, Section 15(c) requires that, where a party does not concur in factual findings made by the hearing officer, that party shall file with the petition for review a record of all the evidence before the hearing officer relating to this factual issue. Respondent failed to do so. The assertions contained in his briefs bear no citations to the record. We, there-fore, will review this matter as if Respondent filed no petition for review. See *In re Geron* (1985), Ind., 486 N.E.2d 514, 515 (claims of factual error in hearing officer's findings are deemed to be without merit where they are unsupported by the record).

■ In light of this, we accept the Hearing Officer's findings and find that the Respondent was admitted to practice law in this state on May 14, 1958, and is therefore subject to the disciplinary jurisdiction of this Court. Respondent represented Barbara Goellner for more than twenty years in various legal matters prior to her death on January 13, 1988. Such representation included obtaining custody of Barbara's then-minor granddaughter, Dawn Borradaile, in June, 1978. Dawn remained in Barbara's custody until Barbara's death. Dawn's mother, Ethel Alden, resided elsewhere with Paul Alden, Dawn's stepfather.

Respondent also prepared Barbara's will, which she executed on July 13, 1987. At about the same time, Barbara purchased an automobile, and registered it in her and Dawn's name, jointly, with full rights of survivorship. She paid for the automobile with funds borrowed on an installment loan from the National Bank of Greenwood. The loan was secured by the automobile through an agreement signed by Barbara.

Ethel and Paul moved into Barbara's home on a part-time basis when Barbara became ill in late 1987. After Barbara's death, Respondent petitioned the Johnson County Superior Court to admit her will to probate and to appoint him as executor of her estate. The court approved the petition, and Respondent qualified as executor. Barbara's estate consisted of bank deposits, corporate stock, the residence (which the Respondent, as executor, was empowered to sell at private sale), household effects appraised at $1,145.00, and jewelry appraised at $100.00. Respondent was also appointed guardian of the estate and person of Dawn. Such guardianship was occasioned by reason of Dawn's age (17), her ownership of property, and her entitlement to Social Security benefits until her eighteenth birthday, on September 25, 1988.

Immediately following Barbara's death, Ethel and Paul began residing full-time in Barbara's home, now an asset of her estate. They continued to live in the home, rent free and with Respondent's acquiescence, until December 19, 1989. During this time, Respondent paid, from estate funds, $927.53 for utility service at the house. Real estate taxes on the property were allowed to become delinquent. Dawn continued to reside at the home for only about two weeks following Barbara's death. She thereafter moved into the home of an adult acquaintance. Prior to moving, Dawn informed Respondent of her intention to do so, and he did not object.

Respondent failed to file an inventory of estate assets until June 5, 1989, more than fourteen months past the statutory time limit. Respondent never placed any estate funds in an interest-bearing bank account or otherwise managed the assets in such a way as to produce income for the estate.

Following publication of notice of the pendency of the estate, seven claims were filed. Respondent failed to endorse any of the claims as allowed or disallowed, as required by law. As a result, each separate claim was assigned a cause number for trial as a contested matter. The estate defaulted on the installment loan financing the automobile, then registered in Dawn's name, resulting in its repossession. Respondent incorrectly reported, on an interim accounting report to the court, a payment of $2,000.00 to the bank pursuant to the installment loan. However, Respondent did pay $566.15 in insurance premiums on the automobile, even though such premiums were not a debt of the estate. Respondent failed to file an Indiana inheritance tax return or to timely pay such taxes. For these services as executor, Respondent paid himself $7,388.00 as attorney's and executor's fees, without obtaining approval for such payment from the court.

On August 10, 1989, Dawn, as legatee under Barbara's will, filed a petition for removal of Respondent as executor and trustee. On December 12, 1989, Respondent filed his resignation as executor, and his renunciation of appointment as trustee, together with a motion for appointment of a successor executor and trustee. Michael Thomasson was thereafter appointed as successor executor. Respondent also filed an interim report on the estate, which listed $24,724.77 in itemized expenditures from estate funds, and which listed the remaining assets of the estate. A hearing was set for the report, but continued several times. In the interim, successor executor Thomasson filed objections to the report, citing eleven irregularities therein and in the actions of Respondent as executor. Respondent filed stipulations, affidavits, and briefs in response, but was nonetheless eventually ordered by the court to reimburse the estate $24,601.43, with credit against that amount of $9,000.00, which Respondent had previously acknowledged as owing and paid. Four thousand dollars of the amount the Court ordered repaid was for Thomasson's legal fees for work on the estate. The rest was predicated on twelve irregularities in the Respondent's administration of the estate, including his delay in selling the estate's real property, improper payment of utility bills and auto insurance premiums, erroneous credit of $2,000.00 on the installment loan in the interim report, late payment of real estate and inheritance taxes, failure to secure approval for executor's and attorney's fees, and his failure to properly invest estate assets. Respondent's interim report was never approved by the court.

Soon after Dawn's eighteenth birthday, she filed a petition to terminate the guardianship, and requested an accounting from Respondent. On March 28, 1990, Respondent filed cancelled checks from his trust account totalling $853.27, together with a verified petition alleging that he had received the sum of $1,026.00 of guardianship funds. The petition asked for attorneys fees and discharge. Dawn objected to Respondent's petition, and moved for an itemization and hearing, later alleging that Respondent had actually received $2,256.00 in guardianship funds. She supported this claim with Social Security Administration records reflecting payments to Respondent on behalf of Dawn in that amount. Dawn eventually settled the matter with Respondent for $1,000.00. Respondent's guardianship report was never approved by the court.

The above facts clearly and convincingly establish that Respondent failed to provide competent representation, in contravention of Ind.Professional Conduct Rule 1.1. Respondent also violated Prof.Cond.R. 8.4(d) by engaging in conduct prejudicial to the administration of justice.

Now that we have found misconduct, it is the responsibility of this Court to determine an appropriate sanction. The representation Respondent provided as executor of the Goellner estate and as Dawn's legal guardian in many respects falls far short of that which we would characterize as competent. Numerous aspects of the estate's final disposition were tainted by Respondent's neglect or inaction. Such neglect and inattention to detail not only injures the parties involved, but also serves to discredit the legal profession, and thus damage a reputation that the vast majority of legal practitioners strive to uphold.

We further note that this is not the Respondent's first brush with the disciplinary process. See *In re Antcliff* (1989), Ind., 546 N.E.2d 303 (sixty-day suspension imposed pursuant to conditional agreement for failing to hold his client's funds separate and apart from his own in violation of Prof.Cond.R. 1.15).

Considering these factors, we conclude that a period of suspension comports with the severity of the misconduct at issue. It is, therefore, ordered that the Respondent, Clifford G. Antcliff, is suspended from the Bar of this state for a period of not less than sixty (60) days, beginning April 4, 1994.

Costs of this proceeding are assessed against the Respondent.