### In the Matter of Hugh Erskine CHERRY.

No. 48S00–9612–DI–745.

Supreme Court of Indiana.

Sept. 1, 1999.

Hugh Erskine Cherry, pro se.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Hugh Erskine Cherry's client, incarcerated for committing the crimes of robbery and confinement, informed his lawyer that he wished to pursue post-conviction remedies promptly upon conclusion of appeals of his convictions. Respondent Cherry, with no legitimate basis for doing so, then delayed for five and one-half years after conclusion of the appeals process before filing a petition for post-conviction relief for that client. For that, we conclude today that he should be suspended from the practice of law.

This case comes before us now upon the duly-appointed hearing officer's findings of fact and conclusions of law, wherein he concluded that the respondent engaged in professional misconduct as charged in the Disciplinary Commission's *Verified Complaint for Disciplinary Action.* The respondent, pursuant to Ind.Admission and Discipline Rule 23(15), has filed a *Petition for Review* of the hearing officer's report, therein alleging factual error as the hearing officer's conclusions. Our review of disciplinary cases is *de novo* in nature, and we will review the entire record presented in this case. *Matter of Kern,* 555 N.E.2d 479 (Ind.1990). The Commission has filed a *Memorandum on Sanction* wherein it argues that a suspension from the practice of law without automatic reinstatement to practice is appropriate here.

We now find that in August 1989 the family of the defendant, who was already serving time after being convicted of attempted murder, robbery and confinement, retained the respondent to pursue post-conviction remedies. The respondent had previously handled several legal matters on behalf of the family, and had even represented the defendant as a juvenile. The respondent told the

defendant's mother that his fee for the representation would be $3,900. Between August 1989 and March 1991, the mother paid the entire fee in installments.

In February 1990 the respondent entered his appearance in the defendant's case and filed a *Petition for Modification,* which was denied that day. Pursuant to the client's understanding, the respondent was to begin work on the defendant's petition for post conviction relief after conclusion of the public defender's appeal of the criminal convictions. Neither the defendant nor his mother instructed the respondent to delay filing the PCR petition. On July 3, 1991, this Court issued its decision concluding appeals of the convictions, therein affirming the Court of Appeals' decision to uphold the defendant's convictions for robbery and confinement.

Between 1990 and 1995, the defendant's mother attempted to contact the respondent more than 50 times, but was able to talk to him on only about one third of those occasions. The defendant telephoned the respondent between 20 and 30 times and was able to speak to the respondent on about half of those occasions. Each time he actually reached the respondent, the defendant asked him to take some type of action on his case. The respondent did not meet with the defendant concerning possible PCR remedies until March 18, 1995, and would not meet with him again until late 1996. Despite the fact that the final appeal of the defendant's conviction concluded in July 1991, the respondent did not file a PCR petition on his behalf until January 9, 1997. The chronological case summary of the case reflects nothing was filed in the case between February 1990 and January 9, 1997. The respondent was suspended from the practice of law in this state during a three-month portion of that time (February 1, 1996, through May 1, 1996) due to professional misconduct not directly related to this action. *Matter of Cherry,* 658 N.E.2d 596 (Ind.1995). He failed to advise his client that he had been suspended—the client learned of the suspension after his mother read of it in a local newspaper.

■ In his petition for review of the hearing officer's findings, the respondent asserts that certain factual findings contained in the hearing officer's report are erroneous. Specifically, he argues that the findings with "regard to communications between the parties, namely [the defendant], [his mother], and the respondent, relative to [the defendant's] desire to wait in regard to filing his Petition for Post–Conviction Relief ..." contain error. However, the respondent failed to file a record of the proceedings before the hearing officer or to provide any reference or citation whatsoever to the record or transcript to support any assertion of error or remedy therefore. In order for this Court to review assertions of factual error, the party petitioning for review must provide a record of all the evidence before the hearing officer relating to the factual issue. Ind.Admission and Discipline Rule 23(15)(b). Where no record of the evidence is filed, this Court is unable to address assertions of factual error. *See Matter of Peteet,* 679 N.E.2d 137 (Ind. 1997). In effect, where a supporting record is absent, we must act as if no petition for review was filed. *Matter of Antcliff,* 629 N.E.2d 848 (Ind.1994). In such circumstances, we accept the factual findings of the hearing officer. *Matter of Grotrian,* 626 N.E.2d 807 (Ind.1994).

■ Indiana Professional Conduct Rule 1.3 requires lawyers to act with "reasonable diligence and promptness" when representing clients. The comment to that rule states that

> a client's interests often can be adversely affected by the passage of time or the change of conditions ... [e]ven when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.

The defendant's appeals had concluded, and the respondent had been repeatedly informed of the defendant's desire promptly to prosecute the contemplated PCR action. The record is devoid of any legitimate reason why the respondent failed for over five years after conclusion of the defendant's appeal before filing the PCR petition. His lack of diligence and promptness in initiating the

action violated Ind.Professional Conduct Rule 1.3.

■ Professional Conduct Rule 3.2 provides that lawyers shall make reasonable efforts to expedite litigation consistent with the interests of their clients. Where the course of action resulting in delay has no "substantial purpose" (such as furthering a legitimate interest of the client), other than the delay itself, the lawyer embarking on it risks violating Prof.Cond.R. 3.2. *See* Comment to Prof.Cond.R. 3.2. The record in this case reveals that the respondent had no substantial purpose motivating his neglect of his client's case. He simply did not get around to filing it for five and one-half years. All the while, his client's conviction stood and the client waited, knowing that a possible avenue of legal redress lingered unexplored. Accordingly, we find that the respondent's actions violated of Prof.Cond.R. 3.2.

Professional Conduct Rule 1.4(a) provides that lawyers must keep their clients reasonably informed about the status of matters and promptly comply with reasonable requests for information. The respondent failed to communicate adequately with his client about the status of the contemplated PCR action. Between 1991 and 1995, despite repeated attempts, both the defendant and his mother were unable to glean any meaningful information from the respondent about the status of the case. Accordingly, we find that the respondent violated Prof.Cond.R. 1.4(a).

■ Now that we have found misconduct, we turn to the issue of proper sanction. The Commission has filed a memorandum on sanction in which it points out that the respondent brings with him to this action a history of client neglect and that this past misconduct should be considered in determination of proper sanction. In 1995, the respondent was suspended for 90 days for neglecting to file a criminal appeal on behalf of a client and for compounding that neglect by later informing the client that the appeal "did not go through." *Matter of Cherry*, 658 N.E.2d at 597. The Commission cites precedent indicating that, in cases of attorney neglect, prior similar misconduct may be viewed as an aggravating factor. *See, e.g., Matter of Cushing*, 663 N.E.2d 776 (Ind.

1996) (attorney who neglected personal injury matter suspended for not less than 30 days in light of prior similar misconduct). Similarly, the Commission in this case asks for a suspension from the practice of law with the requirement that the respondent be required to petition this Court for reinstatement.

We agree with the Commission's arguments that an appropriate sanction here is suspension from the practice of law. The respondent permitted his client's case to languish for an inordinate amount of time under the circumstances. While it may be permissible under certain circumstances for significant periods of time to pass after conviction before a PCR petition is filed, there is nothing in the present record to explain, justify, or mitigate the respondent's unreasonable delay. Further, this episode is remarkably similar to misconduct for which the respondent has been disciplined before. However, because the respondent's delay appears to have been caused by simple neglect rather than a more sinister motive and because there was not attendant misconduct, we do not agree with the Commission's assessment that it necessitates that the respondent formally petition for readmission to this state's bar at the conclusion of his suspension.

It is, therefore, ordered that the respondent, Hugh Erskine Cherry, be suspended from the practice of law in this state for a period of sixty (60) days, beginning October 8, 1999. At the conclusion of the 60–day period, he shall be automatically reinstated to the practice of law.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc. R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against respondent.