ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Joseph M. Cleary
David R. Hennessy
Indianapolis, Indiana



FILED
Jun 03 2010, 2:04 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-0910-CR-428

STATE OF INDIANA,

*Appellant (Defendant below),*

v.

ROBERT RICHARDSON,

*Appellee (Plaintiff below).*

Appeal from the Marion County Superior Court, No. 49G20-0707-FA-135662
The Honorable William Young, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0807-CR-583

**June 3, 2010**

**Sullivan, Justice.**

Defendant Robert Richardson was stopped for driving his pickup truck without wearing a seatbelt. The police officer's subsequent inquiry regarding a "large, unusual bulge" in his pocket led to the discovery of cocaine. The trial court concluded that this inquiry went beyond that authorized by Indiana's Seatbelt Enforcement Act. We agree with the trial court's determination.

**Background**

On July 10, 2007, Indianapolis Metropolitan Police Officer Tanya Eastwood was working an overtime shift when she drove past a pickup truck stopped at a stop sign and noticed that the driver, Robert Richardson, was not wearing a seat belt.[1] Officer Eastwood approached the truck and recognized Richardson from a prior traffic stop, during which she had encountered no problems with him. Richardson was immediately cooperative with Officer Eastwood and admitted that he did not have his seat belt on. While speaking to the passenger, Officer Eastwood noticed "a very large, unusual bulge" in Richardson's pocket. Officer Eastwood asked Richardson what was in his pocket, and he told her that it was his handgun. Officer Eastwood requested Richardson's handgun permit and asked him to exit the vehicle so she could retrieve his gun.

Richardson's handgun permit appeared tattered and wrinkled. The issue date of the permit was "06/12/2006," but the last digit of the year of the expiration date was illegible.[2] Officer Eastwood's personal routine was to perform a criminal background check on anyone with a handgun, regardless of the presence of a permit, so she radioed headquarters.[3]

Headquarters initially informed Officer Eastwood that Richardson had a "prior conviction for possession of cocaine and public intox." (Tr. at 22.) Richardson told Officer Eastwood that his prior conviction was a misdemeanor, and Officer Eastwood therefore asked two sources at headquarters if Richardson's prior conviction was a felony or a misdemeanor. Despite three inquiries, headquarters was unable to respond definitively, ultimately telling Officer Eastwood:

> it shows up that it is a felony D possession of cocaine and the strange thing is I
> looked under sentencing and I know he got probation, it doesn't tell me what pro-

---

[1] The seat belt enforcement statute was amended effective July 1, 2007, just nine days prior to the present incident, to require occupants of all motor vehicles, including pickup trucks, to wear safety belts. See Ind. Code § 9-19-10-2 (Supp. 2008) (as amended by P.L. 214-2007 § 7).

[2] Four years is the minimum time for which a handgun permit is issued in Indiana. See I.C. § 35-47-2-3(e) ("A four (4) year license shall be valid for period of four (4) years from the date of issue.").

[3] Although Officer Eastwood admitted that there was nothing specific about Richardson's handgun permit that made her suspect that it was counterfeit, she said she generally felt that all handgun permits could be easily forged.

2

bation he got.  [B]ut it shows him only serving 20 days so I don't know how accurate that is.

Id.  Officer Eastwood did not use her laptop computer in her patrol car to check Richardson's criminal history, nor did she check the validity of Richardson's handgun permit with headquarters.

Officer Eastwood then placed Richardson under arrest for "having a firearm with a prior felony conviction within the last fifteen years." (Tr. at 33.)  Another police officer who had arrived to assist Officer Eastwood started to pat down Richardson and felt a large object in Richardson's underwear.  Richardson began to struggle with the officers and attempted to flee.  The officers forced Richardson down onto an embankment where he continued to resist and attempted to place his hands in his pants.  During the struggle, Richardson kicked Officer Eastwood in the chest, and Officer Eastwood attempted to use a taser on him.  Although this proved ineffective, the officers were eventually able to subdue Richardson.  The object in Richardson's underwear was later determined to be cocaine.

On July 11, 2007, the State charged Richardson with Class A felony dealing in cocaine, Class C felony possession of cocaine, Class C felony possession of cocaine and a firearm, Class A misdemeanor resisting law enforcement, and Class A misdemeanor battery on a law enforcement officer.  Richardson filed a motion to suppress the evidence, and the trial court held a hearing on this motion and subsequently granted Richardson's motion to suppress.

The State appealed, and the Court of Appeals reversed, holding that the officer's questions and actions were reasonable under the totality of the circumstances and that the trial court erred in granting Richardson's motion to suppress the evidence seized in connection with the seat belt violation.  State v. Richardson, 906 N.E.2d 263 (Ind. Ct. App. 2009).  Richardson sought, and we granted, transfer.  Ind. Appellate Rule 58(A).

3

**I**

Richardson contends that the search incident to arrest offends the proscriptions on unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution and article I, section 11 ("Section 11"), of the Indiana Constitution. Because we resolve Richardson's claim on statutory grounds, we do not address Richardson's constitutional arguments.

Indiana Code section 9-19-10-3.1, also known as the Seatbelt Enforcement Act ("Act"), provides that "a vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter." In Baldwin v. Reagan, 715 N.E.2d 332 (Ind. 1999), we upheld the constitutionality of Indiana Code section 9-19-10-3[4] against a challenge that the statute unconstitutionally provided authority for entirely pretextual traffic stops. We reasoned that the statute could be constitutionally applied because under it law enforcement officers could stop motorists only where they had reasonable suspicion that a seat belt violation had occurred. On the basis of the language of the statute, we agreed with the Attorney General's position that "the statute requires that when a stop to determine seat belt law compliance is made, the police are strictly prohibited from determining anything else, even if other law would permit." Baldwin, 715 N.E.2d at 339. We also stated that the statute could be read to prohibit a police officer making a seat belt stop from even asking the driver for consent to search the vehicle or its occupants. Id. at 339 n.8.

At the same time, the police are not ousted of authority to investigate further if the circumstances warrant. "[A] brief police detention of an individual during investigation is reasonable if the officer reasonably suspects that the individual is engaged in, or about to engage in, il-

---

[4] The statute was amended in 2007 and is now located at Indiana Code section 9-19-10-3.1. The relevant language contained in the amended version is identical to that contained in the version Baldwin interpreted.

legal activity." Id. at 337. We place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. Id.

In Trigg v. State, 725 N.E.2d 446, 448 (Ind. Ct. App. 2000), the Court of Appeals interpreted Baldwin to allow for a limited search for weapons when an officer makes a traffic stop based on reasonable suspicion that a seat belt violation has occurred. However, the Court said that a limited search for weapons must be "the result of actions or behavior on the part of the defendant after the initial stop that led a police officer to fear for his safety." Trigg, 725 N.E.2d at 448 (emphasis added). The Court reasoned that under such circumstances, a limited search for weapons after a stop under the Act is not a search "solely because of a violation" of the seat belt law. Id at 448-49. The search is not to discover evidence of a crime, but to permit the officer to pursue the investigation without fear for his or her own safety and that of others. Id. at 449. The Court concluded that where circumstances existed beyond the seat belt violation itself, a limited search for weapons was not prohibited by the Act. Id. See also Pearson v. State, 870 N.E.2d 1061, 1066 (Ind. Ct. App. 2007) (where a defendant is cooperative, a limited pat-down search for weapons during a seat belt stop is usually unreasonable, but ultimately concluding that the limited search for weapons was reasonable given the police officer's knowledge of the defendant's violent conduct on two prior occasions), trans. denied; State v. Morris, 732 N.E.2d 224, 228 (Ind. Ct. App. 2000) (cautioning that a traffic stop based solely upon the failure of the driver or the passenger to wear a seat belt does not provide reasonable suspicion for the officer to "unilaterally expand [an] investigation and 'fish' for evidence of other possible crimes.").

Did Officer Eastwood's inquiry, during a traffic stop for a seat belt violation, regarding a "large, unusual bulge" in the defendant's pocket, cross the line? The State relies on our decision in State v. Washington, 898 N.E.2d 1200, 1207-08 (Ind. 2008), to contend that Officer Eastwood's inquiry was entirely proper because under Section 11, an officer may ask a motorist whether he or she has weapon on his person. However, Washington did not involve a seat belt stop; the defendant was stopped for, inter alia, repeatedly driving a moped left of center. Id. The language of the Act and subsequent case law clearly dictate that in adopting the Act, the Legislature intended the statute to limit, rather than expand, police authority with respect to seat belt enforcement stops and sought to circumscribe the power of police to use a seat belt stop as an op-

5

portunity to inspect, search, or detain on other grounds, even if constitutional law would permit such police behavior. See Baldwin, 715 N.E.2d 332. Given the language of the Act itself, the Attorney General's own position in Baldwin interpreting that language, and the case law, the Act simply does not permit investigatory behavior based solely on a seat belt violation unless circumstances arise after the stop that independently provide the officer with reasonable suspicion of other crimes.

Trigg, Morris, and Pearson comport with Baldwin. An officer may conduct a limited search or inquiry concerning weapons without obtaining a search warrant if the officer reasonably believes that he or others may be in danger. But Baldwin makes clear that "[r]easonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." Baldwin, 715 N.E.2d at 337 (emphasis added).

Here, Officer Eastwood initiated a traffic stop solely under the Act after she observed Richardson driving without wearing a seat belt. When Officer Eastwood approached Richardson's car, she recognized him from a prior traffic stop, during which she had encountered no problems with violence or resistance. Additionally, Richardson was immediately cooperative with Officer Eastwood and admitted that he was not wearing his seat belt. While Officer Eastwood did observe an "unusual bulge," this fact standing alone did not provide the independent basis of reasonable suspicion that Baldwin requires, especially in light of Richardson's immediate compliance and Officer Eastwood's prior peaceful exchanges with Richardson. Cf. Morris, 732 N.E.2d at 228 (finding an independent basis for further inquiry above and beyond the seat belt violation, where the defendant failed to produce a valid license, and a computer check later revealed his license was suspended). On these facts, we agree with the trial court that Officer Eastwood's questioning about the "unusual bulge" contravened the Act.

There will, of course, be circumstances where something more than an "unusual bulge" will be visible, or other conditions that provide a police officer with the requisite reasonable suspicion to conduct further inquiry. This is not one of them. And even if the facts were such that Officer Eastwood's questioning about the bulge was proper, the fact remains that Richardson's

production of a valid gun permit should have resulted in the termination of any further questioning.

## II

The State contends in the alternative that even if the initial arrest of Richardson was not based upon sufficient probable cause, Richardson's own conduct created separate probable cause to arrest him for forcibly resisting arrest and battery on a law enforcement officer. Specifically, the State maintains that the legality of the initial arrest was an issue that was rendered moot once Richardson elected to fight and kick the officers while they tried to peacefully place him under arrest.

At common law, a person was privileged to resist an unlawful arrest. See Gross v. State, 186 Ind. 581, 583, 117 N.E. 562, 564 (1917). Our courts, however, have uniformly accepted that this common law rule is outmoded in today's modern society. See Fields v. State, 178 Ind. App. 350, 355, 382 N.E.2d 972, 975 (1978) (holding that a private citizen may not use force or resist a peaceful arrest by one he knows or has good reason to believe is an authorized officer performing his duties, regardless of whether the arrest is legal or illegal); accord Dora v. State, 783 N.E.2d 322, 327 (Ind. Ct. App. 2003), trans. denied; Shoultz v. State, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000), trans. denied. In 1976, the Legislature, recognizing this modern trend, enacted the resisting law enforcement statute, Indiana Code section 35-44-3-3, which makes it a crime to "(1) forcibly resist[], obstruct[], or interfere[] with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties[.]" Additionally, Indiana Code section 35-42-2-1(a)(1)(B), makes battery, if committed upon a law enforcement officer, a Class A misdemeanor. Id. ("A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is[] (1) a Class A misdemeanor if . . . (B) it is committed against a law enforcement officer . . . .").

Our standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). The record must

disclose substantial evidence of probative value that supports the trial court's decision and we will not reweigh the evidence.  Id.  Here, the record is insufficient to permit us to give the issue presented by the State the meaningful appellate review deserved, and we will not reweigh the evidence in the absence of a detailed and complete record.  Upon remand, the trial court should consider whether there is sufficient evidence supporting the State's theory that Richardson's actions of forcibly resisting arrest and battery upon a law enforcement officer were severable offenses independent of the seat belt search that warrant prosecution.

## Conclusion

For the reasons set forth above, we affirm the trial court's findings concerning the suppression of the cocaine found on Richardson as a result of the search conducted pursuant to the seat belt violation.  We remand the case to the trial court for further findings concerning whether Richardson's conduct created separate probable cause to arrest him for forcibly resisting arrest and battery upon a law enforcement officer.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.