## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 10 2019, 6:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott L. Barnhart
Brooke Smith
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kent Taderro Bailey, Jr.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 10, 2019

Court of Appeals Case No.
18A-CR-2020

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1608-F4-4469

**Najam, Judge.**

# Statement of the Case

Kent Bailey, Jr. appeals his convictions for unlawful possession of a firearm by a serious violent felon, as a Level 4 felony; resisting law enforcement, as a Class A misdemeanor; and possession of marijuana, as a Class B misdemeanor. Bailey raises two issues for our review, which we restate as follows:

1. Whether the State demonstrated probable cause to support a search warrant for Bailey's residence.

2. Whether the State presented sufficient evidence to show that Bailey constructively possessed a firearm found inside his residence.

We affirm.

# Facts and Procedural History

On August 1, 2016, Evansville Police Department ("EPD") Officer Greg Hosterman submitted a probable cause affidavit to the trial court in support of a search warrant for a residence located at 779 Line Street in Evansville. BMV records showed that Bailey lived at that residence. In relevant part, Officer Hosterman stated as follows in his affidavit:

> Officers have received multiple tips and complaints regarding drug dealing activity at 779 Line St. Officer Doane with the EPD has been flagged down by neighbors and concerned citizens concerning the dealing activity. On today's date, your affiant was parked in an alley conducting surveillance of 779 Line St. Your affiant observed a black 1997 Chevy pick[up] . . . arrive at

the residence, stay for a short time, and then leave after a female got into the vehicle.

Officers Doane and Meeks were in the area and observed the pickup truck after your affiant called off the description. Doane and Meeks observed that the pickup truck had no license plate light and failed to signal 200 feet prior to turning. Officers conducted a traffic stop of [the] vehicle and identified David Flaherty as the driver and [Krissy] Kirk as the passenger. Flaherty has a suspended driver's license. Kirk advised that she actually lives at 779 Line St. although her license provides a different address. Kirk further advised that she lives on Line St. with her boyfriend Kent T. Bailey.

Officers removed both occupants and prepared for an inventory search . . . . Without any prompting or questioning, Kirk advised Officer Thomas that the purse inside the vehicle that she was sitting next to was not her purse. Officer Thomas asked who it belonged to, and Kirk replied that only the wallet inside the purse belonged to her. Officer Thomas went to retrieve the wallet from the purse and found a syringe in the wallet. Kirk then stated that the wallet was not in fact hers. Kirk was handcuffed. Officer Sarah Gibson arrived on scene and conducted a search of Kirk. Gibson found a clear plastic baggie with a field weight of 14 grams of white crystal substance that field tested positive for methamphetamine . . . . Once the baggie of meth was retrieved, Kirk blurted out without any prompting that the baggie was 13.5 grams of meth.

Appellant's App. Vol. 2 at 41-42. Based on those representations, the trial court issued a search warrant for the residence at 779 Line Street.

[4] Officer Hosterman immediately returned to the address with other officers to execute the warrant. Upon arriving, he observed two males standing on the

front porch. As he approached them in full uniform and ordered them to stop, "they ran inside the house." Tr. at 21. Bailey was one of the two men.

[5] After officers secured the perimeter, they entered the residence. EPD Officer William Shirley entered the residence and found it "dark on the inside." *Id.* at 29. However, Officer Shirley observed Bailey "open[ing] the door" to a laundry room that had "a very bright light" on the inside. *Id.* Bailey was inside that room and opening the door away from his body such that Officer Shirley could clearly see who was standing in the doorway. The third time Bailey opened the door to the room, Bailey and the other individual exited the room. The two men were promptly detained.

[6] The officers then searched the residence. Inside the laundry room, officers observed a "service hole" about two feet up from the floor and to which a panel covering had been removed. *Id.* at 48. Inside that hole, officers discovered a loaded handgun. Under a mattress in a bedroom, officers discovered a loaded handgun magazine. The magazine found in the bedroom fit the handgun found in the laundry room. Bailey admitted that the bedroom in which the magazine was found was his bedroom, and officers also found in that bedroom a prescription bottle with Bailey's name on it and the 779 Line Street address. Officers also discovered some marijuana inside the residence.

[7] The State charged Bailey with unlawful possession of a firearm by a serious violent felon, as a Level 4 felony; resisting law enforcement, as a Class A misdemeanor; possession of marijuana, as a Class A misdemeanor; and

possession of paraphernalia, as a Class C misdemeanor. At his ensuing jury trial, Bailey objected to the evidence seized pursuant to the search warrant on the theory that the State lacked probable cause to obtain the warrant. The trial court overruled Bailey's objection, and the jury found him guilty of unlawful possession of a firearm, as a Level 4 felony; resisting law enforcement, as a Class A misdemeanor; and possession of marijuana, as a Class B misdemeanor. The court entered its judgment of conviction and sentence accordingly. This appeal ensued.

## Discussion and Decision

### *Issue One: Probable Cause to Support the Warrant*

[8] On appeal, Bailey first asserts that the trial court erred when it admitted the evidence seized pursuant to the warrant because, according to Bailey, the warrant was not supported by probable cause. Bailey's arguments that "police violated his Fourth Amendment and Article 1, Section 11 rights" raise "questions of law we review *de novo*." *Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017) (quotation marks omitted), *trans. denied*. As the United States Supreme Court has explained with respect to the Fourth Amendment, "as a general matter determinations of . . . probable cause should be reviewed *de novo* on appeal," while "findings of historical fact" underlying those legal determinations are reviewed "only for clear error." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). The Indiana Supreme Court applies the same standard under Article 1, Section 11. *E.g.*, *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014). In other words, we review whether probable cause exists "under a

standard 'similar to other sufficiency issues'—whether, without reweighing the evidence, there is 'substantial evidence of probative value that supports the trial court's decision.'" *Id.* (quoting *State v. Richardson*, 927 N.E.2d 379, 385 (Ind. 2010)).

[9]     As our Supreme Court has explained:

> The existence of probable cause is evaluated pursuant to the "totality-of-the-circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983). Probable cause exists "when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *U.S. v. Grubbs*, 547 U.S. 90, 95, 126 S. Ct. 1494, 1499, 164 L. Ed. 2d 195 (2006) (quoting *Gates*, 462 U.S. at 238, 103 S. Ct. 2317). Significantly, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 245 n.13, 103 S. Ct. 2317. The trial court's task is to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place[,]" *id.* at 238, 103 S. Ct. 2317, while a reviewing court must "ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39, 103 S. Ct. 2317 (quoting *Jones v. US*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960)).

*Eaton v. State*, 889 N.E.2d 297, 299 (Ind. 2008) (alterations and omissions original to *Eaton*).

[10]    Bailey asserts that the totality of the circumstances presented to the issuing court failed to establish probable cause of criminal activity at Bailey's residence. In particular, Bailey contends that Officer Hosterman's probable cause affidavit

cited uncorroborated hearsay from "neighbors and concerned citizens" about the residence. *See* Appellant's App. Vol. 2 at 41. Bailey also argues that "the brief visit" of Kirk to the residence was "insufficient to corroborate the general hearsay statements . . . ." Appellant's Br. at 14. Accordingly, Bailey continues, the issuance of the warrant was contrary to his Fourth Amendment and Article 1, Section 11 rights.[1]

[11] We cannot agree. "[A] probable-cause affidavit 'need not reflect the direct personal observations of the affiant' but may instead rely on hearsay information." *McGrath v. State*, 95 N.E.3d 522, 527 (Ind. 2018) (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213 (1983)). However, there must be either "some reliable information establishing the credibility of the source" *or* "information that, under the totality of the circumstances, corroborates the hearsay." *Id.* (quotation marks omitted).

[12] Here, whether or not Officer Hosterman's recitation of general concerns from the neighbors even mattered to the issuing court, the totality of the circumstances presented in his probable cause affidavit readily corroborated that hearsay. Officers were surveilling the residence based on the concerns of

---

[1] Bailey asserts that his Article 1, Section 11 rights were violated based on the three factors discussed by our Supreme Court in *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005). However, we have held that those factors are not applicable to determine whether there was probable cause for the issuance of a search warrant. *Mehring v. State*, 884 N.E.2d 371, 381 n.4 (Ind. Ct. App. 2008), *trans. denied*. Instead, as under the Fourth Amendment, we evaluate whether the totality of the circumstances before the issuing court demonstrates probable cause. *E.g.*, *McGrath v. State*, 95 N.E.3d 522, 527-30 (Ind. 2018).

neighbors. In the course of that surveillance, they observed a vehicle arrive for a short period of time, after which Kirk entered the vehicle.

[13] At an ensuing traffic stop, Kirk stated she lived at 779 Line Street even though her driver's license showed a different home address. She stated that a purse "that she was sitting next to" was not hers, only to then change her assertion to be that the wallet inside the purse was hers although the purse itself was not, only to then once again change her assertion to be that "the wallet was not in fact hers" once officers found a syringe inside the wallet. Appellant's App. Vol. 2 at 42. During a pat-down of Kirk, she repeatedly pulled away from the officer. Once officers discovered methamphetamine on her person, to which they gave a field weight of fourteen grams, Kirk "blurted out without any prompting" that the methamphetamine weighed the specific amount of 13.5 grams. *Id.*

[14] We conclude that the probable cause affidavit presented sufficient information that, under the totality of the circumstances, both corroborated the hearsay from the neighbors and, even without that hearsay, supported the issuance of the warrant. Thus, we cannot say that the trial court violated Bailey's rights under either the Fourth Amendment or Article 1, Section 11 when it issued the

warrant or admitted the evidence seized pursuant to that warrant. We affirm the trial court's admission of the evidence accordingly.[2]

### *Issue Two: Evidence of Possession*

[15] Bailey next asserts that the State failed to present sufficient evidence to show that he constructively possessed[3] the firearm found inside his residence.

As we have explained:

> In order to prove constructive possession of [contraband], the State must show that the defendant has both: (1) the *intent* to maintain dominion and control over the [contraband]; and (2) the *capability* to maintain dominion and control over the [contraband]. *Wilkerson v. State*, 918 N.E.2d 458, 462 (Ind. Ct. App. 2009) (emphasis added) (quoting *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004)). "The capability prong may be satisfied by 'proof of a possessory interest in the premises in which [the contraband is] found.'" *Monroe v. State*, 899 N.E.2d 688, 692 (Ind. Ct. App. 2009) (citing *Gee*, 810 N.E.2d at 340). "This is so regardless of whether the possession of the premises is exclusive or not." *Id.* . . .
>
> With regard to the intent prong of the test, where, as here, a defendant's possession of the premises upon which contraband is found is not exclusive, the inference of intent to maintain dominion and control over the [contraband]

---

[2] In the alternative, the State asserts that the trial court did not err when it admitted the seized evidence at trial because the good faith exception to an invalid warrant applies. Although the State's argument is well taken, we need not consider it.

[3] We need not consider the State's argument that Bailey actually possessed the firearm.

must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the [contraband] and [its] presence. *Id.* (citing *Gee*, 810 N.E.2d at 341). Those additional circumstances include:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

> *Wilkerson*, 918 N.E.2d at 462.

> *Houston v. State*, 997 N.E.2d 407, 410 (Ind. Ct. App. 2013). In addition to the above six circumstances, we have also recognized that the nature of the place in which the contraband is found can be an additional circumstance that demonstrates the defendant's knowledge of the contraband. *E.g.*, *Carnes v. State*, 480 N.E.2d 581, 587 (Ind. Ct. App. 1985), *trans. denied*. Those enumerated circumstances are nonexhaustive; *ultimately, our question is whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband*. *See Gray v. State*, 957 N.E.2d 171, 174-75 (Ind. 2011).

*Johnson v. State*, 59 N.E.3d 1071, 1073-74 (Ind. Ct. App. 2016) (last emphasis added; footnote omitted).

[16] Bailey asserts that the State failed to show that he had a possessory interest in the premises. Bailey is mistaken. He admitted that the bedroom in which the loaded magazine was found was his bedroom; officers also found in that

bedroom a prescription bottle with his name and the 779 Line Street address on it. And Bailey's BMV records show the 779 Line Street address as his "Legal" and "Mailing" address since at least 2010. Ex. Vol. 1 at 65.[4] The State presented sufficient evidence to show that Bailey had a possessory interest in the residence.

[17] Bailey also asserts that the State failed to present sufficient evidence to show that he knew of the nature and presence of the firearm inside the residence. Again, we cannot agree. Officers found the firearm in a service hole inside the laundry room shortly after they had observed Bailey in that room. They also found a loaded magazine that fit the firearm underneath a mattress in a bedroom that Bailey admitted was his, which room also contained a prescription bottle belonging to Bailey. And upon the arrival of officers at the residence to execute the warrant, Bailey fled. Thus, in light of Bailey's own statements, his attempted flight, the proximity of the firearm to him in the laundry room, the relationship of the firearm to the loaded magazine, and the mingling of the loaded magazine with his other items, the State presented sufficient evidence to enable a reasonable fact-finder to conclude that Bailey knew of the nature and presence of the firearm. Thus, we affirm his conviction for possession of a firearm by a serious violent felon, as a Level 4 felony.

[18] Affirmed.

---

[4] Our pagination of the Exhibits Volume is based on the .pdf pagination.

Pyle, J., and Altice, J., concur.