## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2019, 8:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

John Paul Allen,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 2, 2019

Court of Appeals Case No.
18A-CR-2987

Appeal from the Pike Circuit Court

The Honorable William E.
Weikert, Senior Judge

Trial Court Cause No.
63C01-1802-F2-110

**Najam, Judge.**

# Statement of the Case

John Paul Allen brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence of narcotics and paraphernalia seized from his vehicle following a traffic stop. Allen raises the following two issues for our review:

1. Whether the State's detention of Allen for sixteen minutes after a traffic stop had been completed so that the State could conduct a canine search of the exterior of his vehicle violated his rights under the Fourth Amendment to the United States Constitution.

2. Whether the search violated his rights under Article 1, Section 11 of the Indiana Constitution.

We affirm.

# Facts and Procedural History

In the early morning hours of February 24, 2018, Indiana State Police Trooper C.J. Boeckman, who was operating a fully marked police car, observed Allen operate a motor vehicle at fourteen miles per hour above the posted speed limit near Otwell. Allen passed Trooper Boeckman, and Trooper Boeckman turned his vehicle around to initiate a traffic stop. Before Trooper Boeckman could activate his emergency lights, however, Allen maneuvered his vehicle into the parking lot of a nearby gas station and came to a stop. Allen did not park at the gas pumps, which were operable on a twenty-four hour basis, but instead pulled into the parking lot for a closed convenience store.

[4]     Trooper Boeckman pulled his vehicle alongside gas pumps near Allen's vehicle. Trooper Boeckman then approached Allen at the driver's side window and observed Ed Simison in the front passenger seat. Trooper Boeckman observed that Allen was wearing a sweatshirt with a hood pulled over his head. However, although the temperature was in the high 30s or low 40s, Allen had "the sleeves pulled up." Tr. Vol. II at 20. Trooper Boeckman also noticed that Allen "would not make eye contact" with him. *Id.* When Trooper Boeckman asked Allen why he had pulled so quickly into the gas station, Allen responded that "he was tired and . . . they were going to switch drivers." *Id.* at 81.

[5]     Simison, however, informed Trooper Boeckman that he had picked Allen up from a nearby friend's house. *Id.* at 21. Trooper Boeckman thought it "wasn't adding up" that Simison would pick up Allen but Allen would then drive the vehicle even though Allen "was the one who was tired." *Id.* at 81-82. And, when Trooper Boeckman asked follow-up questions, such as "[w]here they're headed to," Simison and Allen had "difficulty answering" the questions. *Id.* at 21-22. Trooper Boeckman also felt that Allen and Simison exhibited a higher degree of nervousness than typical for traffic stops.

[6]     Pike County Sheriff's Department Deputy Jason McKinney pulled into the gas station to assist Trooper Boeckman after Deputy McKinney had witnessed Allen pull into the convenience store parking lot followed by Trooper Boeckman. Deputy McKinney approached the passenger's side front window of Allen's vehicle and observed that Allen—who Deputy McKinney knew personally but did not immediately recognize because Allen had his hood up

and would not look at Deputy McKinney—was "clutching" the steering wheel and was "very sweaty" despite the cool temperature. *Id.* at 45, 49. Deputy McKinney thought it unusual that Allen, as the driver, did not acknowledge him or look at him.

[7] Trooper Boeckman and Deputy McKinney then conferred at Trooper Boeckman's vehicle, where Trooper Boeckman showed Deputy McKinney Allen's driver's license. Deputy McKinney immediately recognized Allen. Aside from knowing Allen personally, Deputy McKinney also knew that Allen had a history of "significant substance abuse," which included a criminal history. *Id.* at 53. As Deputy McKinney was relating that history to Trooper Boeckman, Trooper Boeckman received a dispatch report that Allen and Simison were suspected of trafficking in narcotics.

[8] At that time, which was approximately nine minutes after Trooper Boeckman had first pulled his vehicle into the gas station behind Allen, Deputy McKinney called for a canine unit. About sixteen minutes later, a canine unit conducted an exterior search of Allen's vehicle and indicated the presence of narcotics at the driver's side door. The officers then searched the vehicle and recovered 144 grams of methamphetamine, less than one gram of heroin, three hypodermic needles (one of which was filled with what officers believed to be heroin), a digital scale, and a large rubber band that would fit around the arm of an adult. The officers arrested Allen and Simison.

The State charged Allen with numerous offenses, and he moved to suppress the State's evidence seized from his vehicle on the theory that the State's seizure had violated his federal and state constitutional rights. After a hearing, the trial court denied Allen's motion to suppress. The court then certified its order for interlocutory appeal, which we accepted.

# Discussion and Decision

### *Standard of Review*

Allen appeals the trial court's denial of his motion to suppress and argues on appeal that the State's seizure of the evidence from his vehicle violated his federal and state constitutional rights. As we have explained:

> [Appellant's] arguments that police violated his Fourth Amendment and Article 1, Section 11 rights raise questions of law we review *de novo*. As the United States Supreme Court has explained with respect to the Fourth Amendment, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," while "findings of historical fact" underlying those legal determinations are reviewed "only for clear error." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). The Indiana Supreme Court applies the same standard under Article 1, Section 11. *E.g.*, *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014). In other words, we review whether reasonable suspicion or probable cause exists "under a standard 'similar to other sufficiency issues'—whether, without reweighing the evidence, there is 'substantial evidence of probative value that supports the trial court's decision.'" *Id.* (quoting *State v. Richardson*, 927 N.E.2d 379, 385 (Ind. 2010)).

*Redfield v. State*, 78 N.E.3d 1104, 1106 (Ind. Ct. App. 2017) (some citations and some quotation marks omitted), *trans. denied*. With that standard in mind, we turn to each of Allen's arguments on appeal.

### *Issue One: Fourth Amendment*

Allen first challenges the legality of the evidentiary seizure under the Fourth Amendment. In particular, he argues that the officers at the scene of the traffic stop lacked reasonable suspicion under the Fourth Amendment to prolong the traffic stop for purposes of conducting a canine search of the exterior of his vehicle.

We initially note that the State does not dispute Allen's assertion that the purposes underlying the traffic stop were at an end by the time Deputy McKinney called for a canine unit. As such, under the Fourth Amendment the officers were not permitted to prolong their detention of Allen "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). Such reasonable suspicion

> is dependent upon both the content of information possessed by police and its degree of reliability. The standard takes into account the totality of the circumstances—the whole picture. Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.

*Navarette v. California*, 572 U.S. 393, 397 (2014) (citations and quotation marks omitted).

[13] Under the totality of the circumstances here, the officers had reasonable suspicion to prolong their detention of Allen for the sixteen minutes they did so in order to conduct the canine search. Deputy McKinney knew Allen personally and knew that Allen had a significant history of drug abuse, which included a prior criminal history. When Deputy McKinney was near Allen's vehicle, Allen refused to look at Deputy McKinney or present himself to Deputy McKinney in a way that would allow him to immediately recognize Allen. Allen also refused to make eye contact with Trooper Boeckman. Further, Allen had a "difficult" time answering basic questions such as where he was coming from and where he was going, and the story he and Simison eventually relayed to the officers "wasn't adding up." Tr. Vol. II at 21-22, 82. And, despite a cool nighttime temperature, Allen had his sleeves rolled up and was very sweaty; he also was clutching the steering wheel and exhibited an above average degree of nervousness for a traffic stop. Finally, immediately before calling for a canine unit, the officers received a dispatch report that Allen and Simison were suspected of trafficking narcotics.

[14] Allen's argument on appeal seeks to piecemeal the facts before the officers and assert that no one fact created reasonable suspicion. But that is not our inquiry. Our task is to review the totality of the circumstances, and, again, that totality readily demonstrates a sufficient basis for reasonable suspicion under the Fourth Amendment. Accordingly, we affirm the trial court's denial of Allen's

motion to suppress under the Fourth Amendment to the United States Constitution.

### Issue Two:  Article 1, Section 11

[15]    Allen also asserts that the State violated his rights under Article 1, Section 11 of the Indiana Constitution when it prolonged his detention to conduct the canine search.  As the Indiana Supreme Court has explained:

> While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application.  To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005).  "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* at 360.  In *Litchfield*, we summarized this evaluation as follows:
>
>> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of:  1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.
>
> *Id.* at 361.

*Myers v. State*, 839 N.E.2d 1146, 1153 (Ind. 2005) (some citations omitted).

Applying those three factors here, we conclude that the officers did not violate Allen's rights under Article 1, Section 11 when they detained him for an additional sixteen minutes to conduct the canine search. First, as explained under Issue One, there was a high degree of suspicion that a violation had occurred and that criminal activity was afoot. Second, the degree of the intrusion—the sixteen minutes that elapsed until the canine unit arrived—while not nothing, was nonetheless reasonable. Third, the extent of law enforcement needs to detain Allen for sixteen minutes to conduct a canine search of the exterior of the vehicle also weighs in favor of the State. Accordingly, we affirm the trial court's denial of Allen's motion to suppress under Article 1, Section 11.

## Conclusion

In sum, we affirm the trial court's judgment.

Affirmed.

Baker, J., and Robb, J., concur.