**In the Matter of Patrick R. TAYLOR.**

**No. 49S00–9305–DI–510.**

Supreme Court of Indiana.

March 25, 1998.

James H. Kelley, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, David B. Hughes, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

The respondent, lawyer Patrick R. Taylor, is alleged to have violated our *Rules of Professional Conduct for Attorneys at Law* by advising his stepmother to waive her right to take against her husband's will when the respondent was a principal residual beneficiary of the will. The hearing officer appointed by this Court to hear this matter concluded that the respondent violated Ind. Professional Conduct Rule 1.7(b). His findings and conclusions are now before us for final resolution of this case.

Neither party has petitioned for review of the hearing officer's report, and, that being the case, we adopt the factual findings contained herein. However, the ultimate decision as to whether the respondent engaged in attorney misconduct and, if so, what an appropriate sanction for that misconduct should be, rests with this Court. The respondent's admission to the bar of this state in 1968 confers with us disciplinary jurisdiction in this proceeding.

We now find that the respondent's natural mother died in 1965. His natural father executed a will in 1975, remarried in 1986, and died in 1990. In May of 1990, the father's will was admitted to probate. Because the will predated the father's marriage to the respondent's stepmother, it made no provision for her. Instead, the respondent and his brother were sole residuary beneficiaries. On May 25, 1990, the respondent filed in his father's pending estate a *Waiver of Right to Take Against Will*, which had been signed by his stepmother some two years earlier. The stepmother contested the waiver, electing instead to take against the will.

The circumstances under which the respondent's stepmother executed the waiver are as follow: On May 19, 1988, the respondent's father and stepmother consulted with him regarding a possible bankruptcy filing for the stepmother. The respondent's father was concerned that if a particular $6,000 debt of the stepmother was not discharged, any property which she might ultimately receive after the father's death might be attached by the creditor. At the time of the consultation,

the respondent knew that his father had acquired significant assets during his life and that he and his brother were the sole residuary beneficiaries under the father's will.

The respondent advised his father and stepmother that day that she should not file for bankruptcy unless she could honestly say to the bankruptcy court that she had no expectation of an inheritance within the next twelve months. The respondent then had what he described as a "brief" conversation with his stepmother, during which he showed her a "pie chart" concerning the law of intestate succession, and explained to her that she could waive her right to take against the father's will but that she would then receive nothing from the probate estate. The respondent testified that he "cautioned" his stepmother as best he could in this regard, despite the fact that he does not routinely practice in the area of probate. When the stepmother indicated that she wanted to proceed with the bankruptcy, the respondent prepared the waiver and had the stepmother sign it. He did not advise her to seek the advice of independent counsel. At hearing on this matter, the respondent claimed the waiver also constituted consummation of the father and stepmother's verbal prenuptial agreement in exchange for the father having put the marital residence (formerly his) in their joint names. However, the waiver contains no reference to that purpose and is not signed by the father.

The respondent next told his stepmother that, because of real and personal property that she owned jointly with the father, she would have to satisfy the $6,000 debt if the father died during the pendency of the bankruptcy. He then told them that they could execute a "spendthrift trust" and convey all joint assets into it. The trust was to be effective only upon the death of the father. By quitclaim deed, the respondent was to be trustee of the jointly held real estate in the event of the father's death. For further legal advice regarding estate planning, the respondent referred his father and stepmother to another lawyer.

On May 20, 1988, the respondent filed his stepmother's chapter 7 petition for bankruptcy, which recited that no other person was holding anything of value in which the stepmother had an interest, and that she had made no transfer of any real or personal property during the year preceding the petition's filing.

Approximately two years later, during the father's estate proceeding, the trial court found, in substance, that there was no prenuptial agreement between the father and the stepmother and that the stepmother had not validly waived her right to take against the will, since it was presumptively fraudulent for the respondent to have advised his client to execute it given that he could possibly benefit from having her do so. The trial court ordered that the stepmother receive the statutory survivor's allowance and the full statutory intestate share of the father's estate. After appeal,[1] eventual remand for retrial of the validity of the waiver, and mediation, the parties agreed that the waiver was invalid due to a failure of consideration in exchange for the stepmother's execution of it.

Indiana Professional Conduct Rule 1.7(b) provides, in relevant part:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.

The respondent's representation of his stepmother was threatened by material limitation by virtue of his own interest as a residual beneficiary in his father's will. His self-interest jeopardized his ability to provide objective legal advice to his stepmother regarding other possible courses of action. The hearing officer found that the respondent failed to obtain the stepmother's consent, and made no finding that the re-

1. *Taylor v. Taylor,* 632 N.E.2d 808 (Ind.Ct.App. 1994); *vacated by Taylor v. Taylor,* 643 N.E.2d 893 (Ind.1994).

spondent believed his representation of the stepmother would not be adversely affected by his self-interest. Accordingly, we conclude that the respondent's representation of his stepmother and his advice to her that she execute the waiver violated Prof. Cond.R. 1.7(b).

■ Having found misconduct, we must now assess appropriate discipline. We examine several factors when deciding on the proper sanction, including the nature of the misconduct. Most troubling is that, by the legal advice he provided to his stepmother, the respondent placed himself in a position of personal benefit, putting his client's interests second to his own. Although apparently initially suggesting the waiver as a means of facilitating his stepmother's contemplated bankruptcy, he later sought to enforce the waiver under circumstances strongly suggesting that he was doing so solely for his personal benefit. The relationship between lawyer and client is fiduciary in nature and precludes a lawyer from using the client's trust to the client's disadvantage or the lawyer's personal benefit. One of the cornerstones of competent legal service is an attorney-client relationship wherein the client is assured of having confidences kept and loyalties preserved. *In re Robak*, 654 N.E.2d 731 (Ind.1995). Additionally, the respondent's obvious conflict also necessarily threatened damage to his ability to provide objective advice to his client.

While assessing sanction, we also consider aggravating factors, including any prior disciplinary actions. The respondent has been disciplined twice before by this Court. *In re Taylor*, 260 Ind. 169, 293 N.E.2d 779 (1973) (two year suspension for having a client sign a false affidavit); *In re Taylor*, 525 N.E.2d 286 (Ind.1988) (public reprimand for failing to return to a client case file materials to which the client was entitled). Each instance of prior discipline, like the present, involved conduct which had a negative impact on or implication for a client. The hearing officer included no mitigating factors in his report.

■ Given the respondent's past misconduct which adversely affected clients and the disservice he inflicted upon another client in the present case, we conclude that a 120–day suspension from the practice of law is appropriate. Significant to this determination was the absence of mitigating factors.

It is, therefore, ordered that the respondent, Patrick R. Taylor, be suspended from the practice of law for a period of one hundred and twenty (120) days, beginning May 4, 1998, at the conclusion of which he shall be automatically reinstated to the practice law.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against respondent.