In the Matter of Patrick R. TAYLOR.

No. 49S00–9708–DI–443.

Supreme Court of Indiana.

Feb. 12, 2001.

James H. Kelly, Taylor Law Office, Indianapolis, IN, For the Respondent.

Donald R. Lundberg, Executive Secretary, David B. Hughes, Staff Attorney, Indianapolis, IN, For the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM

The respondent, Patrick R. Taylor, agreed to handle a client's dissolution for approximately $2,500. Although the divorce court determined that the client's attorney fees should not have exceeded $3,500, the respondent billed the client nearly $13,000 and required her to transfer her $17,000 interest in the marital home to him as payment for about $9,000 in legal fees. The respondent failed to disclose the full terms of the transaction, to advise his client to seek the advice of independent counsel or to obtain her written consent to it. For this professional misconduct, we suspend the respondent from the practice of law in Indiana for no fewer than 24 months.

Having been admitted to the bar of this state in 1968, the respondent is subject to our disciplinary jurisdiction. A hearing officer was appointed to this case, and, after a hearing, tendered his report to this Court. The hearing officer determined the respondent committed the charged misconduct. The respondent, pursuant to Ind.Admission and Discipline Rule 23(15), has filed a *Petition for Review* and an amended *Petition for Review* of the hearing officer's report. Both petitions challenge the hearing officer's factual findings and evidentiary rulings. Our review of disciplinary cases is *de novo* in nature, and we will review the entire record presented. *Matter of Cherry,* 715 N.E.2d 382 (Ind.1999). The hearing officer's findings receive emphasis due to the hearing officer's unique opportunity for direct observation of witnesses, but this Court reserves the right to make the ultimate determination. *Matter of Smith,* 572 N.E.2d 1280 (Ind.1991).

Within that review framework, we now find that when the respondent began representing the client in the pending dissolution, the marital estate totaled approximately $66,000. The two principal assets of the marriage were the pension plan of the former husband and the parties' jointly-owned residence in which the client lived. The home had been purchased for $14,000 in 1983, and the parties believed it had a fair market value of $25,000 at the time of the dissolution. A professional appraisal obtained by the former husband reflected a value of $20,600 for the home and indicated the need for physical improvements.

The dissolution action included disputes over child custody, spousal maintenance and rehabilitative maintenance for the client, who was disabled, unable to work, and without any income or savings. The respondent told the client that his fees for the dissolution would be about $2,500 and that her husband would be asked to pay such fees. The client believed she likely would not be responsible for payment of any attorney fees. In a letter to the client, the respondent specified his hourly rate as $120 and the hourly rate of his associates as $100. The letter did not set forth, and the respondent never explained to the client, what services would be billed, how charges would be computed, or the frequency with which she would receive bills. From the date of the respondent's appearance in the dissolution on January 12, 1989, through the date of the final hearing on February 9, 1990, the respondent never prepared or sent the client any interim billings. The client was unaware of how the fees were escalating during the respondent's representation of her. She also was unaware of the services for which she was being charged. For instance, the

client did not know that the respondent was charging her a minimum $30 for each phone call she placed to him.

During trial in February 1990, the respondent offered into evidence an itemized statement of his services totaling $12,696. The trial court awarded the home to the client and ordered her husband to pay a total of $3,500 toward her attorney fees, stating:

> That in making the award of $3,000.00 in attorney's fees, the Court has taken into consideration the overall assets of the marriage and has also taken into consideration problems that have existed with respect to this matter which were caused by the (client). The Court believes that given the issues in this case and the net assets involved in this case that attorney's fees should not have exceeded the sum of $3,500.00, and the award of $3,000.00 coupled with a preliminary award of $500.00 which has been paid, the Court feels that any fees over and above this amount should be paid by the (client).

At the respondent's request, the client on March 12, 1990, executed a promissory note in favor of, and prepared by, the respondent in the sum of $9,196.00. That figure represented the balance of her attorney fees after the former husband's payment of $3,500. The note provided for interest at 12 percent annually, attorney fees and costs of collection. It also provided that all sums were due without relief from valuation and appraisement laws.

The respondent also requested the client execute an *Assignment of Installment Contract for the Sale of Real Estate* in his favor. The assignment provided that the client "assigns all her right, Title and interest in the (marital residence) as security for a certain promissory note entered into on the 12th day of March, 1990." At that time, using the home's appraised value, the client had about $17,000 of equity in the home.[1] The respondent did not advise the client to seek the advice of independent counsel with respect to the transfer. He also did not disclose to the client the terms of the note and assignment transaction or obtain the client's written consent to those terms.

On April 25, 1990, the respondent obtained the client's signature on a quitclaim deed he had prepared transferring all of her interest in the marital home to him. Again, the respondent did not advise the client to consult independent counsel, failed to disclose the terms of the transaction to her in writing, and failed to obtain the client's written consent. Six months later, the respondent sold the property to a third party for $25,000 and did not return any portion of that amount to the client.

■■■ In his *Petitions for Review*, the respondent argues that his failure to provide interim billing to the client was not misconduct. He testified that the client and he regularly discussed the escalating fees and that he was not obligated to provide interim billing, in part because the client had no means to pay the bill. While interim billing may not *per se* be required during every representation, the respondent's failure to do so in this case amounted to a lack of adequate communication with his client, as required by the *Rules of Professional Conduct*, given the amount by which the respondent's actual fees exceeded his initial projections, the client's expectation that she would not have any out-of-pocket legal expenses, and the presence of only two significant assets in the marital estate, neither of which was liquid. Failure to keep a client apprised of escalating fees may constitute a violation of Prof.Cond.R. 1.4. *See, e.g., Matter of*

1. If the fair market value of the home, as agreed to by the client and her former husband during the dissolution, is used, the client would have had approximately $22,000 in equity. However, the respondent disputed the value of the home, suggesting that it may have declined following the appraisal, as the home was condemned at one point for lack of running water.

*Grimm,* 674 N.E.2d 551 (Ind.1996) (attorney violated Prof.Cond.R. 1 .4(a) when he represented that attorney fees were taken care of after the first invoice but submitted a substantial bill for legal services at conclusion of representation). The client's inability to pay the fees was a reason to provide interim billing, not a justification for avoiding them; the importance of limiting her legal fees and the likelihood that the cost of attorney services would impact strategic decisions regarding the representation would have increased as the attorney bills mounted. Accordingly, we find that the respondent violated Ind.Professional Conduct Rule 1.4(a) by failing to provide notice or information to the client of her escalating legal bills.[2] As a consequence of that omission, the respondent failed to keep the client adequately informed about the status of her case to the extent reasonably necessary to permit her to make informed decisions regarding the representation, in violation of Prof.Cond.R. 1.4(b).[3]

 We further find that the respondent violated Prof.Cond.R. 1.8(a) by knowingly entering into business transactions with the client without taking steps to ensure that the transactions were fair and reasonable to the client. Specifically, the respondent acquired an interest in the client's property adverse to the client without disclosing the terms of those transactions in writing, advising or allowing the client to seek independent counsel, or obtaining the client's written consent, all in violation of Prof.Cond.R. 1.8(a).[4] The respondent contends that Prof.Cond.R. 1.8(a) does not apply, as he and the client were merely settling their accounts in an appropriate manner. The respondent is incorrect. Prof.Cond.R. 1.8(a) expressly governs transactions where the attorney knowingly acquires an ownership, possessory, security or other pecuniary interest adverse to the client. By obtaining a security interest in, and then ownership of, the client's home, the respondent knowingly acquired a pecuniary interest adverse to the client within the meaning of Prof. Cond.R. 1.8(a). *See, e.g., Matter of Davis,* 740 N.E.2d 855 (Ind.2001) (1.8(a) violation where, at attorney's suggestion, client transferred her interest in home and other

**2.** Prof.Cond.R. 1.4(a) provides:
> A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**3.** Prof.Cond.R. 1.4(b) provides:
> A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**4.** Prof.Cond.R. 1.8(a) provides:
> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
> (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction;
> (3) the client consents in writing thereto.

The respondent argues that the client's signature on the agreement constitutes her written consent within the meaning of Prof.Cond.R. 1.8(a). That rule contemplates the written consent of the client to the transaction after full disclosure. The client's signature on documents on documents transferring property to the client's attorney cannot be considered "written consent" under Prof.Cond.R. 1.8(a) where the client has not been informed of the implications or terms of the transaction as required by that rule.

Indeed, the client testified that she would never have entered into the transactions at issue in this case if she had known that the respondent intended to retain all profits from the sale of her home. She testified that at the time she signed the documents at issue, she believed she was agreeing to the sale of the property by the respondent and the payment of any profit to her, after subtraction of the attorney fees obligation. Hearing Transcript, p. 54. Prof.Cond.R. 1.8(a) is specifically designed to protect against such misunderstandings by requiring full, written disclosure of the terms of the transaction and the client's consent thereto.

property to attorney without being advised of adverse consequences or to seek independent counsel). In fact, Prof.Cond.R. 1.8(a) is specifically designed to protect clients against the very abuse which occurred here. The *Rules of Professional Conduct* place restrictions on business transactions between lawyers and their clients based on an assumption that the lawyer in such dealings will generally possess, for various reasons, an unfair advantage in bargaining position. *Matter of Horine,* 661 N.E.2d 1206 (Ind.1996). In this case, the respondent managed to persuade the client to transfer property in which she had equity of at least $17,000 to satisfy a debt of $9,200.

The respondent argues that the transfer of the property was not fair or reasonable to him, not the client. He asserts he ultimately lost money on the transaction, given the time, money and materials he invested in rehabilitating and selling the property. The evidence is undisputed that the client owed $3,200 on the property at the time of the transfer and that the respondent paid that debt in full before selling the property. The respondent's tax returns showed he invested an additional $4,000 in the property before selling it for $25,000. That left him with a net profit on the property of at least $17,800—almost double what the client owed him in legal fees. Even if the ultimate selling price of the property is disregarded and only the lowest appraised value of the property ($20,600) at the time of the transfer to the client is considered, it is clear the respondent unduly profited from the transaction by accepting property with a net worth of $17,400 (appraised value of $20,600 minus the $3,200 owed by the client on the property) to pay a $9,000 legal bill. Thus, we find that the respondent's transaction with his client divested her of much more than she owed him.

Given our finding of misconduct, we must determine an appropriate sanction. In doing so, we consider the misconduct, the respondent's state of mind underlying the misconduct, the duty of this court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors. *Matter of Mears,* 723 N.E.2d 873 (Ind.2000).

The respondent took advantage of his client for personal gain, billing her nearly five times the amount he estimated the representation would cost, failing to advise her of the mounting legal fee, and then ultimately obtaining her residence in satisfaction of his fee. The respondent unfairly took advantage of his superior bargaining position to the significant detriment of his client. In the end, his unemployed and disabled client lost her only significant asset to satisfy an attorney's bill she did not believe she would ever have to pay.[5]

We note as aggravating circumstances the respondent's significant disciplinary history and his failure to acknowledge any wrongdoing. See *Matter of Taylor,* 260 Ind. 169, 293 N.E.2d 779 (1973) (respondent suspended for not less than two years for suborning perjury); *Matter of Taylor,* 525 N.E.2d 286 (Ind.1988) (public reprimand for failing to return case file materials to client); *Matter of Taylor,* 693 N.E.2d 526 (Ind.1998) (120–day suspension for advising stepmother to waive her right to elect to take against the respondent's father's will, which left everything to the respondent and his brother). The misconduct which led to the respondent's suspension in 1998 is remarkably similar to this matter—the respondent provided legal advice in an improper manner to the detriment of the person he advised and for his

---

**5.** The Commission initially charged the respondent with violating Ind.Prof. Cond. R. 1.5(a) by charging an unreasonable fee when he billed the client more than $900 for telephone calls from the client, including $30 for each message the client left with the respondent's secretary. The facts of this case may have supported that finding, as well as other violations of that rule.

own pecuniary gain. The respondent's continuing disregard for the ethical strictures placed on attorneys renders him a risk to the public and justifies a significant period of suspension.

It is, therefore, ordered that the respondent is hereby suspended from the practice of law in Indiana for at least 24 months, beginning March 12, 2001. At the conclusion of that period, he may not be reinstated to the practice of law except upon a successful petition pursuant to Ind. Admission and Discipline Rule 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.