CORRECTED: DECEMBER 19, 2019
RENDERED: AUGUST 29, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000344-TG

MEREDITH L. LAWRENCE,                                        APPELLANTS
AND CUT-N-SHOOT, LLC.

                     ON TRANSFER FROM COURT OF APPEALS
V.                              CASE NO. 2018-CA-000993
                    GALLATIN CIRCUIT COURT NO. 14-CI-00055
                    HONORABLE JAMES ROGER SCHRAND II

BINGHAM GREENEBAUM DOLL, L.L.P.                          APPELLEE

### OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### VACATING AND REMANDING

We granted transfer of this ongoing dispute between Meredith L. Lawrence and the Bingham Greenebaum Doll law firm to address Lawrence's various claims of error in trial court proceedings resulting in the foreclosure and judicial sale of some of Lawrence's property. Although we reject most of Lawrence's claims of error, we find that the trial court's grant of summary judgment in favor of Bingham was erroneous. We vacate the summary judgment and remand this case to the trial court for further proceedings consistent with this opinion.

# I. BACKGROUND.[1]

We recently dealt with the ongoing litigation between these parties.[2] In 2008, Lawrence retained Bingham attorney J. Richard Kiefer to defend him against federal tax-evasion charges. At some point in the representation, the parties agreed to revise their original fee agreement because Lawrence had fallen behind in his payments. The new agreement stated that Lawrence would pay a flat fee of no less than $450,000 the principal not to exceed $650,000. Lawrence agreed to secure his payment with a mortgage on real estate he owned, and he signed a promissory note evidencing his debt.

Lawrence was convicted of three counts of filing false tax returns. He then sued Kiefer and Bingham, among others, in Kenton Circuit Court for legal malpractice. Because Lawrence had not paid for a portion of the legal services provided to him, Bingham filed a counterclaim to recover its fee; specifically, Bingham sued for enforcement of the promissory note. The Kenton Circuit Court dismissed Lawrence's malpractice claim and granted default judgment to Bingham on its counterclaim. We upheld this judgment.[3]

Simultaneously occurring with the Kenton Circuit Court case, Bingham sued Lawrence in Gallatin Circuit Court to foreclose on the property Lawrence agreed to mortgage as security on his debt for Bingham's services. Gallatin

---

[1] We note that we only have a partial, incomplete record on appeal that has not been appropriately cited to by either party.

[2] *Bingham Greenebaum Doll, LLP v. Lawrence*, 567 S.W.3d 127 (Ky. 2018); *Lawrence v. Bingham Greenebaum Doll, LLP*, 567 S.W.3d 133 (Ky. 2018).

[3] *Lawrence*, 567 S.W.3d at 131.

County was the chosen venue for this action because the mortgaged real estate was situated in that county.[4] Lawrence counterclaimed for legal malpractice.

Also occurring simultaneously with the above two cases was a collateral attack on his conviction that Lawrence filed in federal court based, in part, on a claim of ineffective assistance of counsel. The federal court ruled against Lawrence on his ineffective-assistance-of-counsel claim and issued its final order before the resolution of the Kenton and Gallatin cases.

In the Gallatin Circuit Court foreclosure action, Bingham moved for summary judgment, which the trial court granted. Then, upon Bingham's motion, the trial court entered an order of sale. After several further procedural steps, the property was sold, and the sale was confirmed by the trial court on May 30, 2018.

Lawrence appealed the trial court's judgment; the appeal eventually transferred to this court.

## II. ANALYSIS.

Lawrence attacks the trial court's grant of summary judgment in favor of Bingham that enforced the mortgage on his Gallatin County property, and he attacks the validity of the judicial sale.

The thrust of Lawrence's appeal can be summarized into two main arguments. First, Lawrence attacks the trial court's exercise of jurisdiction over this case. Second, Lawrence argues that the trial court erred when it upheld the enforceability of the mortgage.

---

[4] Kentucky Revised Statutes ("KRS") 452.400(3) ("Actions must be brought in the county in which the subject of the action, or some part thereof, is situated: (3) For the sale of real property under a mortgage, lien, or other encumbrance or charge[.]").

3

Because this case arrives here on the trial court's grant of summary judgment in favor of Kiefer and Bingham, we review the trial court's grant de novo.[5] A summary judgment should only be granted when there "is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[6]

As a preliminary matter, throughout Lawrence's brief he alleges that Kiefer engaged in the unauthorized practice of law while representing him in the federal criminal prosecution. His argument is without merit.

Kiefer was admitted to practice law in Indiana and sought and obtained pro hac vice admission to represent Lawrence in the U.S. District Court for the Eastern District of Kentucky. Lawrence argues, however, that regardless of those facts, Kiefer represented a Kentuckian and appeared in federal court within the geographical boundaries of the Commonwealth of Kentucky, so Kiefer should have sought admission to the Kentucky bar. Essentially, Lawrence is arguing that an attorney, duly admitted to the bar in another state and the federal bar in which he is practicing, cannot practice law in the state where that federal court is located without admission to the bar of that state, as well. We reject that contention.

We find persuasive the Maryland Court of Appeals' articulation of the rules applicable in this situation.[7] In the conventional factual scenario involving an attorney who is not admitted in Kentucky and who maintains a

---

[5] *Adams v. Sietsema*, 533 S.W.3d 172, 176 (Ky. 2017).

[6] Kentucky Rules of Civil Procedure ("CR") 56.03.

[7] *Kennedy v. Bar Ass'n of Montgomery County, Inc.*, 561 A.2d 200, 209–10 (Md. App. 1989).

4

principal office for the practice of law in the jurisdiction where that attorney is admitted, there is no tension between the Kentucky Rules of Professional Conduct and admission to the bar of the federal court in Kentucky.[8] That federal recognition allows the unadmitted attorney to render professional services on behalf of the client in the federal court in Kentucky.[9] It is only when the attorney establishes a principal office for the practice of law in Kentucky, where he is not admitted to practice, that creates tension between that attorney's federal bar admission and the Kentucky Rules of Professional Conduct.[10] Here, there is no evidence that Kiefer's principal office is in Kentucky; in fact, his principal office appears to be in Indiana.

Moreover, we find persuasive the District of Connecticut bankruptcy court's articulation of the rule that an attorney who is not licensed in Kentucky but who is authorized to practice before a federal court may, notwithstanding the Kentucky Rules of Professional Conduct, practice law in Kentucky and even maintain an office here so long as the services rendered in Kentucky are limited to those reasonably necessary and incident to the specific matter pending in the federal court.[11] There is no evidence here that Kiefer's services to Lawrence exceeded the bounds of this rule. We decline to hold that Kiefer was engaged in the unauthorized practice of law when representing Lawrence on his federal tax-evasion charges after having been duly admitted in Indiana and the

---

[8] *Id.*

[9] *Id.* at 210.

[10] *Id.*

[11] *In re Peterson*, 163 B.R. 665, 675 (D. Conn. 1994).

Eastern District of Kentucky pro hac vice and having his principal office in Indiana.

### A. Lawrence's arguments challenging the Gallatin Circuit Court's jurisdiction over this case are meritless.

Lawrence argues that the Gallatin Circuit Court does not have jurisdiction over this case. All these jurisdictional arguments are meritless, however.

First, Lawrence argues that the doctrine of claim preclusion prevents the Gallatin Circuit Court from hearing Bingham's case. Specifically, Lawrence argues Bingham's claim for enforceability of the promissory note, which has been adjudicated in favor of Bingham by default judgment, precludes Bingham from asserting a claim for enforceability of the mortgage.

"For further litigation to be barred by claim preclusion, three elements must be present: (1) identity of the parties, (2) identity of the causes of action, and (3) resolution on the merits."[12] Lawrence's argument fails for lack of identity of the causes of action.

"[W]ell-settled . . . case law permits lenders to bring separate enforcement actions on [a] mortgage and [a] note."[13] "A note and a mortgage given to secure it are separate instruments, executed for different purposes, and an action for foreclosure of the mortgage and upon the note are regarded and treated, in practice as separate and distinct causes of action, although both may be

---

[12] *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 371 (Ky. 2010) (citing *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464 (Ky. 1998)).

[13] *Turczak v. First American Bank*, 997 N.E.2d 996, 1000 (Ill. App. 2013).

pursued in a foreclosure suit."[14] "Even when a promissory note is incorporated into the mortgage, it is still independent of the mortgage and is a separate enforceable contract between the parties, and logically, even when a mortgage is incorporated into a promissory note, the note remains independent of the mortgage and is a separate, enforceable contract between the parties."[15] In sum, a "mortgagee is allowed to choose whether to proceed on the note or guaranty or to foreclose upon the mortgage. These remedies may be pursued consecutively or concurrently."[16]

This rationale also works to reject Lawrence's argument that Bingham's claims were impermissibly split. Additionally, "the rule against splitting causes of action is an equitable rule, and it is subject to a number of exceptions."[17] One of the exceptions to the general rule against claim splitting identified by the Restatement is when the claimant "was unable . . . to seek a certain remedy or form of relief in the first action because of . . . restrictions on [the court's] authority to entertain multiple . . . demands for multiple remedies or forms of relief in a single action[.]"[18]

When Lawrence filed his claim for legal malpractice in Kenton Circuit Court, Bingham most likely assumed it needed to file a counterclaim for

---

[14] George Blum, et al., *American Jurisprudence*, 55 Am. Jur. 2d Mortgages § 452 (May 2019 update) (citing *Monetary Funding Group, Inc. v. Pluchino*, 867 A.2d 841 (Conn. App. 2005); *Fifth Third Bank v. Hopkins*, 894 N.E.2d 65 (Ohio App. 2008)).

[15] Blum, *supra* FN 13 (citing *Hopkins*, 894 at 65).

[16] *LP XXVI, LLC v. Goldstein*, 811 N.E.2d 286, 290–91 (Ill. App. 2004) (quoting *Farmer City State Bank v. Champaign National Bank*, 486 N.E.2d 301, 306 (Ill. 1985)).

[17] *Coomer*, 319 S.W.3d at 372 (citing *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 193 (Ky. 1994)); Restatement (Second) of Judgment § 26 (1982)).

[18] Restatements (Second) of Judgment § 26(1)(c) (June 2019 update).

enforcement of the promissory note, which prompted it to file that counterclaim. Bingham then became faced with KRS 452.400, which states, "Actions must be brought in the county in which the subject of the action, or some part thereof, is situated[] [f]or the sale of real property under a mortgage[.]" So Bingham brought a separate foreclosure action in Gallatin Circuit Court, which is located in the county in which Lawrence's property lies, in anticipation that Lawrence would allege improper venue in Kenton County if Bingham would have attempted to proceed with foreclosure on the property in Kenton County. We decline to apply the "equitable rule" against claim splitting in these circumstances.

Next, Lawrence alleges that he was improperly served. Unfortunately, we have before us on appeal an incomplete record that has not been properly cited to by either party. Lawrence was in prison at the time he was served. Bingham alleges that service was completed, through a warning order attorney, by certified mail on May 21, 2014. The record does confirm that Lawrence responded with a filed Answer and Counterclaim to Bingham's complaint and did not do so by limited and special appearance:

> An appearance to an action is the first thing that a defendant does in court, and the appearances are of two kinds and are defined as special and general. The special is one where the defendant appears for the purpose of testing the sufficiency of the summons to give the court jurisdiction of his person, and the general appearance is where the defendant by some act of his is considered to submit his person to the jurisdiction of the court. Where the court has jurisdiction of the subject-matter of the action, a general appearance by the defendant waives all defects in the process or in the service of the process, or even the service of process at all. A special appearance made for the purpose of objecting to the jurisdiction of the court over the person on account of defective process or defective service of the process does not have the effect of giving the court jurisdiction over the person. Although it has sometimes been held that it is necessary for one who makes a

8

special appearance, if he would prevent his appearance from being considered a general one, that he should expressly state that his appearance is solely for the purpose of objecting to the jurisdiction; but the better rule seems to be that in courts of record the nature of the act of the defendant should determine whether the appearance is special or general. If the motions and pleadings of the defendant relate alone to the testing of the jurisdiction of the court over him, his appearance can only be considered to be special and not general.[19]

We cannot read Lawrence's Answer and Counterclaim to indicate that he protested service. In fact, nowhere in the pleading does Lawrence specifically object to service; instead, Lawrence responds to the merits of Bingham's complaint. Additionally, Lawrence specifically stated in his pleading that he "does not object to the Gallatin Circuit Court's jurisdiction over this matter." Simply put, Lawrence's "pleadings [do not] relate alone to the testing of the jurisdiction of the court over him," and he therefore waived any allegation of improper service.

Lawrence alleges that the trial court ordered, on July 7, Bingham to serve Lawrence personally. Our review of the record brought to us from below reveals no evidence of such an order.[20] The "[a]ppellant has a responsibility to present a 'complete record' before the Court on appeal."[21] An "[a]ppellant may not raise allegations of errors on appeal 'based entirely on a silent record.'"[22] So we decline to entertain Lawrence's argument in this regard.

---

[19] *Brumleve v. Cronan*, 197 S.W. 498, 504 (Ky. 1917) (citations omitted).

[20] *Montgomery v. Koch*, 251 S.W.2d 235, 237 (Ky. 1952) ("Matters not disclosed by the record cannot be considered on appeal.").

[21] *Hatfield v. Commonwealth*, 250 S.W.3d 590, 600 (Ky. 2008) (citing *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 926 (Ky. 2007)).

[22] *Hatfield*, 250 S.W.3d at 601 (quoting *Commonwealth v. Thompson*, 697 S.W.2d 143, 144 (Ky. 1985)).

## B. The trial court erroneously granted Bingham summary judgment.

Next, Lawrence argues that his obligation to Kiefer and Bingham should be rendered null and void for various reasons.

First, Lawrence argues that his failure to sign one part of the total agreement between the parties renders the entirety of the agreement null and void. The agreement in this case, executed after Lawrence failed to make payments for Bingham's legal services rendered, involved Bingham continuing to provide legal services to Lawrence on the condition that he sign three documents: 1) a promissory note memorializing Lawrence's payment obligation; 2) a security interest agreement securing that obligation; and 3) a full release form verifying that the property securing the promissory note was unencumbered. The effect of Lawrence's failure to sign the full release form is not to discharge Lawrence of his potential obligations on the promissory note and security interest agreement, especially after Bingham continued to provide legal services to him; rather, the effect is, at most, the unenforceability of that part of the agreement.

Even so, "one party's failure to sign an agreement does not invalidate it if the parties' conduct manifests assent to the terms of the contract."[23] Not only did Lawrence sign the other parts of the agreement, but in a letter to Bingham, Lawrence explicitly stated that he did, in fact, sign the full release form. And Bingham proceeded with its representation of Lawrence after the execution of the agreement. We find no merit in Lawrence's argument here.

---

[23] *Signature Technology Solutions v. Incapsulate, LLC*, 58 F.Supp. 3d 72, 81 (D.D.C. 2014) (citations omitted); *see Hartford Fire Ins. Co. v. Prather*, 291 S.W. 9, 9–10 (Ky. 1927).

Second, Lawrence argues that Kiefer fraudulently induced Lawrence to hire him by a misrepresentation that he was licensed to practice in Kentucky when he was not. But whether Kiefer was licensed to practice in Kentucky had nothing to do with his ability to represent Lawrence in federal court on tax-evasion charges. As such, this representation cannot be termed "material" to void Lawrence and Bingham's contract for Lawrence having been fraudulently induced in hiring Kiefer to represent him.[24]

Third, Lawrence alleges that Kiefer violated various Kentucky Rules of the Supreme Court ("SCR") and common-law principles governing the attorney-client relationship and, as a result, he should owe no obligation to Kiefer or Bingham. Lawrence's argument appears to be a breach-of-fiduciary-duty argument that Kiefer's actions as his attorney should void the contracts he signed as a matter of public policy. Bingham responds by asserting that Lawrence is simply rehashing his legal-malpractice claim that has already been decided or, at the very least, arguments he has made before that have been rejected.

The SCR and common-law principles allegedly violated by Kiefer to which Lawrence cites as forming the basis for his argument can be grouped into three categories: 1) rules that one would allege as having been violated in an ineffective-assistance-of-counsel claim; 2) rules that one would allege in seeking to reduce or wholly discharge the amount of attorneys' fees owed; and 3) rules that are irrelevant for purposes of either of those contentions. Bingham

---

[24] *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) ("In a Kentucky action for fraud, the party claiming harm must establish" that the alleged fraudulent representation was "material.").

11

is correct in asserting that the principles of issue and claim preclusion prevent Lawrence from asserting violations of rules belonging to the first and second category articulated above.

"[S]ometimes referred to as collateral estoppel[,] [i]ssue preclusion requires four elements. First, (1) 'the issue in the second case must be the same as the issue in the first case.' In addition, the issue must have been (2) litigated, (3) decided, and (4) necessary to the court's judgment."[25] After Lawrence's conviction, he filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, one of the grounds of his petition being ineffective assistance of counsel. As noted by the federal trial court in that case, to be able to succeed on an ineffective-assistance-of-counsel claim, Lawrence needed to prove that Kiefer's performance in his representation of Lawrence was deficient first and foremost.[26] Neither the federal magistrate judge nor the federal district judge found any hint of deficient performance on Kiefer's part.[27]

Whether Kiefer's performance in representing Lawrence was deficient is an issue that has already been litigated. "The standards for proving ineffective assistance of counsel in a criminal proceeding are equivalent to the standards

---

[25] *Commer v. CSX Transp., Inc.*, 319 S.W.3d 366, 374 (Ky. 2010) (quoting *Yeoman v. Com., Health Policy Bd*, 983 S.W.2d 459, 465 (Ky. 1998)).

[26] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[27] This is important to note because although the test for ineffective assistance of counsel is a two-pronged test, both courts explicitly stated that counsel's performance was not deficient; in other words, the courts did not rest their rulings on the prejudice prong but rather the deficiency prong. Had the courts rested their rulings on the prejudice prong, Lawrence would have a legitimate argument that issue preclusion would not apply because determining whether counsel's performance was deficient is different from determining whether the defendant was prejudiced by counsel's performance. But this did not happen, issue preclusion applies.

12

for proving legal malpractice in a civil proceeding" because both require proving deficient conduct on the part of the attorney.[28] It is therefore appropriate to apply the doctrine of issue preclusion to this challenge to Kiefer's professional performance because that issue was actually litigated and decided by the federal district court, and it was necessary to the federal court's judgment in rejecting Lawrence's claim for ineffective assistance of counsel.[29] So the trial court correctly summarily dispensed with Lawrence's argument predicated on proving deficient performance on the part of Kiefer.

Lawrence additionally seeks to attack the amount of attorneys' fees owed. But this is an argument barred by claim preclusion. We held earlier that claim preclusion did not bar Bingham from seeking enforcement of the mortgage after it had already received a judgment in its favor for enforcement of the promissory note because those documents give rise to separate and distinct rights, the promissory note establishing the obligation and the mortgage establishing security for that obligation. Here though, Lawrence's argument challenging the amount of attorneys' fees owed, is an argument that seeks to dispute the validity of the obligation owed by him to Bingham. But Lawrence's attorney-fee obligation to Bingham has already been established in the judgment rendered in the Kenton Circuit Court for purposes of claim preclusion: "The fact that no defense was offered in the suit against the contentions of the [plaintiff] cannot make any difference, for the rule as to the conclusiveness of judgments applies to a judgment by default or decree pro

---

[28] *Sanders v. Malik*, 711 A.2d 32, 33 (Del. 1998) (citations omitted); *see also Zeidwig v. Ward*, 548 So.2d 209, 213–15 (Fla. 1989).

[29] *Id.*

13

confesso."[30] The default judgment effectively rendered valid Lawrence's obligation on the promissory note. The promissory note obligated Lawrence to pay a specific sum in attorneys' fees. The time to challenge the reasonableness of the fee was in the Kenton County litigation, not in the Gallatin Circuit Court litigation, where all that is at issue is the enforceability of the security interest securing payment on the promissory note.[31]

Lawrence's claim here seeking to refute the establishment of the amount of attorneys' fees owed, i.e. the enforceability of the promissory note, from his prior suit fails because that is the same cause of action as the cause of action in the Kenton Circuit Court suit. As we have stated, a resolution on the merits exists via the Kenton Circuit Court's grant of default judgment. And it goes without saying that identity of parties exists here because the same two parties are involved in this litigation as in the Kenton County litigation. Because all the elements of claim preclusion are satisfied here, Lawrence's challenge on the amount of attorneys' fees owed, i.e. the enforceability of the promissory note, is precluded. Any argument made by Lawrence seeking to renege on his obligation owed per the promissory note is barred by claim preclusion.

But Lawrence has alleged additional violations of rules concerning the attorney-client relationship that are irrelevant to an ineffective-assistance-of-counsel claim or to a challenge to the amount of attorneys' fees owed to Bingham. Bingham and the trial court are incorrect in asserting that claim and

---

[30] *Davis v. Tuggle's Adm'r*, 178 S.W.2d 979, 981 (Ky. 1944) (citing *Kimbrough v. Harbett*, 60 S.W. 836 (Ky. 1901)).

[31] *Sedley v. City of West Buechel*, 461 S.W.2d 556, 558 (Ky. 1970) ("[A] judgment in a former action operates as an estoppel . . . as to matters which were necessarily involved and determined in the former action[.]").

14

issue preclusion principles and the exoneration rule, the exoneration rule being the basis for the dismissal of Lawrence's legal malpractice claim, bar Lawrence from seeking relief based on violations of rules that have nothing to do with ineffective assistance of counsel or the obligation owed on the promissory note.

Specifically, we find merit in Lawrence's argument that Bingham violated the SCR and common-law principles governing an attorney's entering into a contract with a client that subjects that client's property to a security interest. Such an allegation has absolutely nothing to do with the alleged deficient performance of counsel in counsel's representation, the exoneration rule, or, more generally, a legal-malpractice claim. Nor does such an allegation have anything to do with the amount of attorney's fees owed to Bingham or the validity of the execution of the promissory note. Rather, this argument attempts to attack the validity of Bingham's securing its attorney's fee obligation with a security interest in Lawrence's real property.

As stated before, for claim preclusion to apply, identity of causes of action must exist. Kentucky follows the "transactional approach" in determining whether identity of causes of action exists.[32] "This Court's "task is to 'compare the factual issues explored in the first action with the factual issues to be resolved in the second."[33] "[T]he test for 'common nucleus of operative fact' as defined for purposes of res judicata is not simply one of

[32] *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998) ("The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts.").

[33] *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1302 (11th Cir. 2001) (quoting *Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir. 1992)).

whether the two claims are related to or may materially impact one another."[34] "[T]he connection between the core facts of the [prior] suit . . . and the core facts of the [current suit cannot be] too attenuated[.]"[35] "If the factual scenario of the two actions parallel, the same cause of action is involved in both."[36]

Lawrence's claim that Bingham improperly subjected his real property to a security interest is not a legal-malpractice claim but rather a breach-of-fiduciary-duty claim. Although it is possible that those claims can overlap, "a breach-of-fiduciary-duty claim focuses on 'whether an attorney obtained an improper benefit from representing the client,' while a negligence claim focuses on 'whether an attorney represented a client with the requisite level of skill.'"[37]

In arguing that Bingham acted improperly by taking a security interest in his property, Lawrence is not alleging deficient performance on the part of Bingham in representing him but rather that Bingham obtained an improper benefit from him—a security interest in his real property. The facts of Lawrence's breach of fiduciary duty claim do not "parallel" the facts of his legal malpractice claim; the facts giving rise to the alleged various instances of deficient performance on the part of Bingham in representing Lawrence in his criminal case have nothing to do with the facts giving rise to Bingham allegedly

---

[34] *In re Piper*, 244 F.3d at 1301.

[35] *Id.* at 1302.

[36] *Motient Corp. v. Dondero*, 269 S.W.3d 78, 83 (Tex. App. 2008) (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994)).

[37] *Beck v. Law Officers of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App. 2009) (quoting *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App. 2007)).

improperly obtaining a security interest in Lawrence's real property. This lack of "connection . . . is simply too attenuated to justify res judicata."[38]

This is the same reason why Lawrence's prior claim for enforcement of the promissory note does not bar him from currently asserting unenforceability of the security interest contract. As stated before, enforcing a promissory note is a separate cause of action from enforcing a security interest. Additionally, the facts underlying each claim do not "parallel"; subjecting a client's real property to a security interest has nothing to do with creating and enforcing a promissory note establishing the amount of fee owed.

Finally, the exoneration rule does not foreclose our ability to determine if the security interest contract is enforceable. Justice Venters discussed the inapplicability of the exoneration rule to Lawrence's argument in this regard in his unanimous majority opinion involving these parties, holding specifically that the exoneration rule only bars Lawrence's claim for legal malpractice: "[Lawrence's] concern relating to fee disputes . . . relates to contractual matters and thus is not affected by the Exoneration Rule."[39] The reason for this is that the exoneration rule destroys a plaintiff's allegation of legal malpractice because it negates the plaintiff's ability to prove causation, i.e. the plaintiff's criminal conviction was caused by his own criminal conduct, not the attorney's alleged deficient performance. But whether an attorney allegedly breached a fiduciary duty by subjecting the attorney's client's real property to a security

---

[38] *In re Piper*, 244 F.3d at 1302.

[39] *Lawrence*, 567 S.W.3d at 141.

interest without meeting the requirements for validly doing so has nothing to do with tort-law causation.

We must examine Lawrence's breach-of-fiduciary-duty argument, for which the remedy sought is the voiding of the security interest contract. The only specific argument Lawrence makes on this point that has possible merit and that is not barred by claim or issue preclusion is whether Kiefer violated SCR 3.130(1.8)(a) by taking a possessory interest in Lawrence's property and by taking a property interest, the value of which exceeded the fees owed. We have explained above why claim preclusion does not bar this argument. And no court, including the federal court addressing Lawrence's ineffective assistance of counsel claim, has ever reached the merits of Lawrence's argument on this basis, so issue preclusion does not apply to bar Lawrence from making this argument.

SCR 3.130(1.8)(a) states:

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

18

The requirements of this rule apply if a lawyer takes a security interest in the client's property for payment of fees.[40]

Although violations of the SCR "do not create a private right of action[,]"[41] we have recently stated that "an obligatory Rule of Professional Conduct for attorneys carries equal public policy weight as any public policy set forth in our Constitution or in a statute enacted by the General Assembly."[42] And as the federal district court noted, the principle that the SCR do not create a private right of action "d[oes] nothing to overturn the principle that courts will not enforce contracts that violate public policy. Also, it d[oes] nothing to question that the Rules of Professional Conduct may reflect Kentucky's public policy in proper circumstances."[43] In so finding, the federal district court in *Allied Resources* held that contracts that violate SCR 3.130(1.8)(a) are unenforceable.[44] And a contract that violates SCR 3.130(1.8)(a) is one that was entered into without satisfaction of that rule's requirements.

So all that remains is determining whether Kiefer or Bingham abided by the requirements outlined in SCR 3.130(1.8)(a). The record reveals that "the transaction and terms on which the lawyer acquires the interest [were] fully disclosed and transmitted in writing" to Lawrence. The record also reveals that

---

[40] *In re Fisher*, 202 P.3d 1186, 1196 (Colo. 2009); *In re Taylor*, 741 N.E.2d 1239, 1242–43 (Ind. 2001).

[41] *Rose v. Winters, Yonker & Rousselle, P.S.C.*, 391 S.W.3d 871, 874 (Ky. App. 2012).

[42] *Greissman v. Rawlings and Associates, PLLC*, 571 S.W.3d 561, 567 (Ky. 2019).

[43] *Institutional Labor Advisors, LLC v. Allied Resources, Inc.*, Civil Action No. 4:12–CV–00044–JHM, 2014 WL 4211196, at *5 (W.D. Ky. Aug. 25, 2014).

[44] *Id.*

Lawrence "consent[ed], in a writing signed by [him], to the essential terms" of the contract.

But numerous genuine issues of material facts on this issue remain.[45] We find no evidence in the record to resolve the issue of whether the "transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client[.]" Nor is there anything in the record resolving the issue of whether Lawrence was "advised in writing of the desirability of seeking and [was] given a reasonable opportunity to seek the advice of independent legal counsel on the transaction." Additionally, Bingham has not offered any other way to resolve these issues or Lawrence's argument in this regard on this appeal besides the issue and claim preclusion arguments that we have rejected. These are issues that must be resolved by the trial court before summary judgment can be granted.

Having found that genuine issues of material fact remain unresolved, we must vacate the trial court's grant of summary judgment and remand this case to the trial court for further proceedings consistent with this opinion.

## C. We need not decide Lawrence's other raised arguments at this time.

Lawrence raises a number of other arguments in his attempt to attack the validity of the trial court's grant of summary judgment and proceeding with the foreclosure and sale: 1) the order of sale and order confirming sale of the property that were entered by a judge that later recused should be rendered null and void because of that recused judge's disqualification; 2) further discovery was warranted; 3) the sale of the property was defective for a number

---

[45] CR 56.03.

20

of reasons; 4) the proceedings occurring in the Kenton Circuit Court case should have stayed proceedings in the Gallatin Circuit Court. Although we do not reach these arguments at this time, should Lawrence lose on remand he would not be barred from making these same arguments in the future.

### III.   CONCLUSION.

Concluding that the trial court erroneously granted summary judgment, we vacate it and remand the case to the trial court for further proceedings consistent with this opinion.

All sitting. All concur.


COUNSEL FOR APPELLANT: MEREDITH L. LAWRENCE

Meredith L. Lawrence
Pro Se

COUNSEL FOR APPELLANT: CUT-N-SHOOT, LLC.

Brandy Lawrence
Katy Lawrence, Esq.


COUNSEL FOR APPELLEE:

Beverly Ruth Storm
Frank Kern Tremper
Arnzen, Storm, & Turner, P.S.C.

# Supreme Court of Kentucky

2018-SC-000344-TG

MEREDITH L. LAWRENCE, AND CUT-N-SHOOT, L.L.C.                    APPELLANT

|   | ON TRANSFER FROM COURT OF APPEALS |
|---|---|
| V. | CASE NO. 2018-CA-000993 |
|   | GALLATIN CIRCUIT COURT NO. 14-CI-00055 |
|   | HONORABLE JAMES ROGER SCHRAND II |

BINGHAM GREENBAUM DOLL, L.L.P.                    APPELLEE

## ORDER DENYING PETITION FOR MODIFICATION OR EXTENSION

The Petition for Modification or Extension, filed by the Appellant, of the Opinion of the Court, rendered August 29, 2019, is DENIED. However, the Court, *sua sponte*, corrects a clerical error as to the citation of the case within the opinion. Said correction does not affect the holding of the original Opinion of the Court

. Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J.; sitting. All concur. Nickell, J.; not sitting.

ENTERED: December 19, 2019.

_____
CHIEF JUSTICE

10